UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUNO, INC.,<br><br>Movant,<br><br>v.<br><br>MECHANICAL LICENSING COLLECTIVE,<br><br>Respondent. | Case No. 3:26-mc-00021<br><br>Chief Judge William L. Campbell, Jr.<br>Magistrate Judge Luke A. Evans |

To: The Honorable William L. Campbell, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

Movant, Suno, Inc., ("Suno"), filed a motion to compel non-party Mechanical Licensing Collective ("MLC") to comply with a subpoena duces tecum that was served on it and that issued from the District of Massachusetts. (Doc. No. 1.) MLC filed a response in opposition (Doc. Nos. 22, 26), and Suno replied (Doc. Nos. 28, 30). This matter is ripe for decision. For the reasons that follow, the Court respectfully recommends granting Suno's motion.[1]

[1] A motion to quash or to enforce a subpoena usually is a non-dispositive matter when it is filed in the context of a larger case. Where the motion, however, is the entire proceeding as it is here, resolution of the motion will terminate the proceeding. *See Nat'l Lab. Rels. Bd. v. NPC Int'l, Inc.*, No. 13-0010, 2017 WL 634713, at *3 (W.D. Tenn. Feb. 16, 2017) ("Once an order is entered in this matter, the entirety of the dispute that is before this Court will be resolved. Therefore, the application to enforce the subpoena is dispositive, and the magistrate judge only had authority to render a report and recommendation."). Accordingly, the Court will address the motion by report and recommendation. *See, e.g., Fam v. Norton*, No. 3:26-MC-00008, 2026 WL 1508743, at *1 n.1 (M.D. Tenn. Apr. 16, 2026), *report and recommendation adopted*, No. 3:26-MC-00008, 2026 WL 1269890 (M.D. Tenn. May 8, 2026); *Westlake Vinyls, Inc. v. Resolute Mgmt., Inc.*, No. CV318MC00013, 2018 WL 4515997, at *1 (W.D. Ky. Aug. 21, 2018) (citations omitted), *report and recommendation adopted*, No. CV 3:18MC-00013-JHM, 2018 WL 5306666 (W.D. Ky. Oct. 16, 2018); *Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 13-50212, 2013 WL 1844075, at

## I. Background

UMG Recordings, Inc., Capital Records LLC, and Sony Music Entertainment ("Plaintiffs") sued Suno in the District of Massachusetts for copyright infringement. (Doc. No. 1 at 2.) Suno is "a comparatively new and upcoming technology company that built an AI-powered tool that allows ordinary people to create and share new musical recordings." (*Id.* at 2.) Plaintiffs claim that Suno made unauthorized copies of their copyrighted sound recordings to train its artificial-intelligence ("AI") music model. The result was that Suno's AI-generated music flooded digital streaming platforms, diverting listeners from Plaintiffs' catalogs and reducing their market share. (*Id.*)

Suno argues that the best information to rebut Plaintiffs' claim of diminished market share is in the possession of MLC. (Doc. No. 8 at 2.) MLC is a non-profit company tasked[2] by the United States Copyright Office. "Operating under a detailed set of regulations, the MLC collects monthly reports from DSPs [digital service providers] that contain, among other things, track-level performance data. These monthly reports show how each track (i.e., each sound recording) performed in that month, and also provide data about the individual track *and* the music label that owns the related sound recording copyright." (*Id.*) Suno claims that the data held by the MLC "will show what actually happened in the digital streaming market before and after AI-generated music arrived and is therefore directly relevant to Plaintiffs' theory of liability and damages." (*Id.* at 3.)

In April of 2026, Suno served a document subpoena on MLC. (Doc. No. 1-2 at 10.) MLC served written objections. (*Id.* at 22–25.) Suno and MLC spent months conferring about production

---

*3 (E.D. Mich. Apr. 11, 2013) (citations omitted), *report and recommendation adopted*, No. 13-50212, 2013 WL 1844073 (E.D. Mich. Apr. 30, 2013).

[2] *See* 37 C.F.R. § 210.23(a) ("Mechanical Licensing Collective, incorporated in Delaware on March 5, 2019, is designated as the mechanical licensing collective.").

of the requested information, to no avail.[3] (*Id.* at 27–50.) In light of MLC's then-stated objections, Suno issued another document subpoena on August 31, 2026. (*Id.* at 55.) The subpoena requested the following:

> For Amazon, Apple, Deezer, Pandora, SoundCloud, Spotify, Tidal and YouTube, respectively, Documents sufficient to show Performance Data for all Labels in Your Database on a monthly basis for the period 2021 to present.

(*Id.* at 67.) The subpoena generally defines "Performance Data" as "data identifying individual music tracks and the number of times each track was played or streamed on a Music Streaming Service or digital service provider ('DSP') during a given period of time . . . ." (*Id.* at 58.) MLC served written objections to the newly issued subpoena. (*Id.* at 71). The parties conferred again, to no avail. (*Id.* at 81.) On October 15, 2026, Suno filed the instant motion with this Court. (Doc. No. 1.)

## II. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that parties may generally "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Discovery may be obtained from non-parties, including through the use of a subpoena to produce documents under Rule 45. Specifically, Rule 45(a) provides that a clerk of court or an attorney authorized to practice in that court may issue and sign a subpoena that is directed to a person who is not a party to a lawsuit and

---

[3] Despite MLC's written objections, the parties' correspondence shows months of discussions regarding the type of data maintained by MLC and the estimated cost associated with production. On July 16, 2026, counsel for MLC indicated that he found a vendor and provided what he characterized as a "heavily caveated estimate." (Doc. No. 1-2 at 40.) He also directed counsel for Udio to send over "the protective order" if their client wished to move forward with the production. (*Id.*)

that commands the person to produce documents, electronically stored information, or tangible things in the person's possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(iii).

Rule 45(b)(1) provides that "[a]ny person who is at least 18 years old and not a party may serve a subpoena" and that "[s]erving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). Rule 45(d)(2)(B) provides that "[a] person commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection to . . . copying . . . any or all of the materials" and that such objections "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "If an objection is made," the party serving the subpoena may, "[a]t any time, on notice to the commanded person, . . . move the court for the district where compliance is required for an order compelling production . . . ." Fed. R. Civ. P. 45(d)(2)(B)(i). "[T]he order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Rule 37(a)(1) also provides that "a party may move for an order compelling . . . discovery," including an order compelling discovery from a nonparty. Fed. R. Civ. P. 37(a)(1); *see also* Fed. R. Civ. P. 37(a)(2) ("A motion for an order to [compel discovery from] a nonparty must be made in the court where the discovery is or will be taken."); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 468 (6th Cir. 2006) (holding that "the Federal Rules provide that a motion to compel discovery or disclosure by a nonparty must be made to the court in the district where the discovery is being taken") (citation omitted). Finally, Rule 45(g) provides that "[t]he court for the district where compliance [with a subpoena] is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(g).

## III. Analysis

MLC argues that the subpoenaed information is not relevant and not proportional to the needs of the case; that the information is confidential; and that compliance with the subpoena would cause them undue burden and expense. (Doc. No. 26.) MLC does not seem to disagree that the information **sought** by Suno is relevant. Instead, it argues that the information that it **possesses** is not. MLC's relevance argument delves into a somewhat convoluted discussion regarding the purported distinction between "sound recordings" and "musical works." The question at issue is whether the information reported to MLC by the digital service providers is "Performance Data" for sound recordings or something else entirely. (*See* Doc. No. 1-2 at 82.) MLC maintains that it "administers and processes data concerning musical works, not sound recordings." (Doc. No. 1-2 at 79.) Suno, relying on the federal regulations governing reporting requirements, argues that sound recordings are inclusive of musical works because DSPs are required to report to MLC "sound recording[s] embodying a musical work" to ensure that royalties are properly paid. (Doc. No. 8 at 15 (quoting 37 C.F.R. § 210.27(c)(4)(ii))); *see also* 17 U.S.C. § 115. MLC also argues that the information that it possesses is incomplete because the DSPs often do not identify the respective record label for the musical work when reporting. (Doc. No. 1-2 at 82.) Suno concedes that some of the information may be incomplete but insists that it "will never know unless the MLC provides the data . . . ." (Doc. No. 8 at 14.) Ultimately, MLC contends that it "should [not] be required to produce what it knows is incomplete and insufficient data for purposes of sound recording market analysis . . . ." (Doc. No. 26 at 16.) The information possessed by MLC is relevant, and the Court is not persuaded that the fact that some of the information provided to MLC may be incomplete makes it any less so. Even less persuasive is MLC's attempted distinction between "musical works" and "sound recordings." The federal regulations set forth what information is required to be tracked and reported to MLC, and that information appears to be

relevant to Suno's need for track-level performance data to defend against Plaintiffs' claims regarding loss of market share. *See Braun v. Norton Healthcare, Inc.*, No. 3:24-CV-00039, 2025 WL 3680326, at *2 (W.D. Ky. Dec. 18, 2025) ("Essentially, a request for discovery seeks relevant information if there is any possibility that the information sought may be relevant to a claim or defense of any party in the action.") MLC has failed to establish otherwise.

MLC argues that the information sought by the subpoena is not proportional to the needs of the case because Suno can obtain it from another "more readily accessible" source. (Doc. No. 26 at 16.) MLC contends that the information is more properly obtained from Plaintiffs or from the individual DSPs identified in the subpoena. (*Id*. at 14–16.) MLC claims that Suno has already served subpoenas seeking "overlapping information" on the digital service providers and in some instances has negotiated production. (*Id.*) MLC also claims that Suno has already received "over five years of raw market data" from the Plaintiff record labels. (*Id.*) Suno does not appear to dispute this fact but argues that the information gleaned from the DSPs and Sony is insufficient because it will not contain the "market-wide data" that they seek. (Doc. No. 8 at 15.) Suno also claims that MLC is the only source of track-level "performance data for the entire market," which is what they need to defend the suit. (*Id.* at 16.)

The following factors are relevant to a consideration of whether the scope of discovery is proportional:

> (1) the importance of the issues at stake in the action;
> (2) the amount in controversy;
> (3) the parties' relative access to relevant information;
> (4) the parties' resources;
> (5) the importance of the discovery in resolving the issues; and
> (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (numbering added). The question of whether Suno's use of sound recordings to fuel its platform infringed on the rights of others is of the utmost importance. The

total amount in controversy is unclear other than to say that it could be substantial based on the amount of statutory damages allowed per work infringed and a calculation of the Suno's profits from the alleged infringement. (Doc. No. 1-1 at 34–35.) The amount in controversy also rests largely on whether, and if so, to what degree, Plaintiff's market share was affected by Suno's use of the sound recordings. This is the salient question that Suno claims as the basis for the information that it seeks from MLC. The information that Suno seeks from MLC appears to be distinct from the information that it sought from other sources. Suno insists that they have not obtained, and cannot obtain, track-level market-wide performance data from any other source. There is nothing in the record to suggest that any party lacks financial resources.

MLC urges the Court to deny the motion to compel because to comply with the subpoena would cause an undue burden. According to the papers, production would require two to three weeks of staff time, which would divert staff from their regular duties. (Doc. No. 26 at 17.) "The hourly pay rate of the staff who would be tasked to work on such a project ranges from $150 to $315 per hour." (*Id.*) "The project would generate approximately 35–40 terabytes of data." (*Id.*) Transferring the data would cost $5,000 and $100 per terabyte per month to host the data. (*Id.*) Suno has agreed to pay the cost of production and hosting. (Doc. No. 8 at 18.) "Undue burden is to be assessed in a case-specific manner considering such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Cahoo v. SAS Inst. Inc.*, 377 F. Supp. 3d 769, 775 (E.D. Mich. 2019) (internal quotation marks and citations omitted). "Courts must balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of that person as a non-party is a factor." *Id.* (internal quotation marks and citation omitted). The Court is mindful of the potential burden that will be placed on

MLC, who is a non-party to the underlying action; however, considering the magnitude of the issues and Suno's willingness to pay the costs of production, the Court finds that the information is proportional to the needs of the case.

MLC argues that the information sought is confidential and cannot be produced. (Doc. No. 26 at 16.) Suno argues that "the Copyright Office regulations that govern this exact data expressly authorize its production in response to a subpoena so long as a protective order is in place, as one is here." (Doc. No. 8 at 3.) The Court finds that confidentiality does not stand as a barrier to production because any issues related to confidentiality are appropriately addressed by protective order.

## IV. Recommendation

For the reasons stated above, the Court respectfully recommends granting Suno's motion to compel (Doc. No. 1) and requiring compliance with the subpoena, with reasonable costs to be paid by Suno, within 30 days after entry of the order adopting this recommendation. The Court recommends further that, upon compliance with the subpoena, this miscellaneous matter be closed.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 23rd day of November, 2026.

LUKE A. EVANS
United States Magistrate Judge